IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT
FEB 7 2018

| | |
|---|---|
| UNITED STATES OF AMERICA | **(UNDER SEAL)** |
| v. | CRIMINAL NO. 1:18-CR-74 |
| ANTONIO ALDEMAR AVILA-ACEVEDO, | <u>Count 1</u>: Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending and Having Reasonable Cause to Believe that it will be Unlawfully Imported into the United States |
| a/k/a "Tony," | |
| a/k/a "El Enano," | |
| FABIAN ANDRES LEYTON-VARGAS, | |
| a/k/a "El Flaco," | (21 U.S.C. §§ 959(a), 960, 963) |
| JOSE MAURICIO CASTANEDA-GARZON, | <u>Forfeiture Notice</u>: 21 U.S.C. §§ 853 & 970 |
| a/k/a "Pedro," | |
| a/k/a "El Primo," | |
| a/k/a "Cabezon," | |
| Defendants. | |

## INDICTMENT

JANUARY 2018 TERM – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

<u>COUNT ONE</u>
(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing
and Intending and Having Reasonable Cause to Believe that it would be Unlawfully Imported
into the United States)

From in and around June 2017 and continuing thereafter up to and including the date of this Indictment, the exact dates being unknown to the Grand Jury, within the jurisdiction of the United States and in an offense begun and committed outside the jurisdiction of a particular State

or district, including in Colombia, and elsewhere, the defendants Antonio Aldemar AVILA-ACEVEDO (also known as "Tony," also known as "El Enano"), Fabian Andres LEYTON-VARGAS (also known as "El Flaco"), and Jose Mauricio CASTANEDA-GARZON (also known as "Pedro," also known as "El Primo," also known as "Cabezon"),[1] who will be first brought to the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a), and 963.

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The defendants and their co-conspirators, both known and unknown to the Grand Jury, comprise the Colombia-based AVILA-ACEVEDO Drug Trafficking Organization (DTO). This DTO traffics multi-hundred kilogram quantities of cocaine, valued at millions of United States Dollars, around the world by causing such cocaine to be secreted aboard maritime vessels in the Port of Santa Marta, Colombia. These vessels transport the cocaine to destinations around the world.

2. The United States is the world's largest market for cocaine. Colombia is the source of the overwhelming majority of cocaine in the United States.

---

[1] Each defendant will be referred to herein by the portion of his or her name that is in all capitalized letters in this paragraph.

3. Colombian DTOs, including the AVILA-ACEVEDO DTO, generally transport cocaine to Central America and Mexico by sea or air. Traffickers in those countries then transport the cocaine north, typically over land, into the United States. Countries along this route are known as "transshipment points" or "transshipment countries," where cocaine is typically transferred from one group of traffickers to another as it is transported along its route to the United States.

4. The price of cocaine increases at each stage of the supply chain as it is transported north from Colombia. The incremental price increases enable multiple drug traffickers to make substantial profits on the shipments of cocaine.

5. Guatemala, which shares a border with Mexico, is a "transshipment country" through which a large percentage of Colombian cocaine is trafficked before reaching the United States.

6. Members of the AVILA-ACEVEDO DTO perform various tasks and take on various roles in furtherance of the conspiracy. For example:

   a) AVILA-ACEVEDO obtains large-scale quantities of cocaine from sources of supply in Colombia. He causes this cocaine to arrive at and pass through the Port of Santa Marta so that it can be hidden in shipping containers, loaded aboard commercial maritime vessels, and shipped to locations around the world, including Guatemala—a transshipment point for cocaine destined for the United States. He does this, in part, by bribing, or causing others to bribe, security and law enforcement officials in the port. Once this occurs, AVILA-ACEVEDO attempts to ensure these same bribed officials are responsible for inspecting, or

3

causing the inspection of, cargo in which cocaine has been secreted.

    b) CASTANEDA-GARZON aids AVILA-ACEVEDO in obtaining cocaine from sources of supply. He also participates in negotiations with port security and law enforcement officials for bribes to allow this cocaine to be passed through the port, loaded aboard ships, and transported out of Colombia to other traffickers and customers.

    c) LEYTON-VARGAS uses his position within the Colombian Ministry of Defense and as a Colombian Air Force officer to identify and contact security and law enforcement officials in the Port of Santa Marta on behalf of the AVILA-ACEVEDO DTO. LEYTON-VARGAS participates in negotiations with these same officials for bribes to allow cocaine obtained by the AVILA-ACEVEDO DTO to be passed through the port, loaded aboard ships, and transported out of Colombia to other traffickers and customers.

## WAYS, MANNERS AND MEANS OF THE CONSPIRACY

The primary purpose of this conspiracy is to make as much money as possible by trafficking cocaine from Colombia into Central America, and ultimately into the United States. The defendants and their co-conspirators, both known and unknown, used the following ways, manners and means, among others, to carry out this purpose:

5. It was part of the conspiracy that the defendants and their co-conspirators played different roles, took upon themselves different tasks, and participated in the affairs of the conspiracy through various criminal acts.

6. It was part of the conspiracy that the AVILA-ACEVEDO DTO obtained cocaine

from sources of supply in Colombia.

7. It was further part of the conspiracy that the AVILA-ACEVEDO DTO conducted drug-trafficking activities in the Port of Santa Marta, Colombia.

8. It was further part of the conspiracy that the AVILA-ACEDVEDO DTO transported cocaine aboard commercial maritime vessels that launched from the Port of Santa Marta.

9. It was further part of the conspiracy that the AVILA-ACEVEDO DTO caused cocaine it trafficked into the port to be smuggled aboard commercial maritime vessels bound for various countries, including Guatemala.

10. It was further part of the conspiracy that the AVILA-ACEVEDO DTO bribed port officials and law enforcement officers at the Port of Santa Marta to ensure their cocaine would avoid interdiction.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

In order to further the goals and purposes of the conspiracy, the defendants and their co-conspirators committed overt acts, including, but not limited to, the following:

11. In and around June 2017, at or near Santa Marta, Colombia, LEYTON-VARGAS, AVILA-ACEVEDO, and CASTANEDA-GARZON, solicited the assistance of a port security officer at the Port of Santa Marta, Colombia, to smuggle cocaine through the port so that it could be transported aboard commercial maritime vessels. This port security officer was an undercover law enforcement official (UC).

12. On or about July 27, 2017, AVILA-ACEVEDO, CASTANEDA-GARZON, and LEYTON-VARGAS, caused approximately 1,773 kilograms of cocaine to enter the Port of

Santa Marta, Colombia. AVILA-ACEVEDO, CASTANEDA-GARZON, and LEYTON-VARGAS, intended to ship this cocaine aboard a commercial maritime vessel destined for Guatemala; however, law enforcement seized the cocaine before it departed the port.

13. On or about August 5, 2017, at or near Santa Marta, Colombia, LEYTON-VARGAS and CASTANEDA-GARZON met with the UC, referenced in paragraph 12, to discuss his payment for the attempted shipment of approximately 1,773 kilograms of cocaine that was seized by law enforcement on or about July 27, 2017.

14. On or about August 19, 2017, at or near Santa Marta, Colombia, LEYTON-VARGAS and CASTANEDA-GARZON provided the UC with approximately $56,700.00 in United States Currency as compensation for his participation in the conspiracy, including his efforts in the attempted shipment of approximately 1,773 kilograms of cocaine that law enforcement seized on or about July 27, 2017.

(All in violation of Title 21, United States Code, Section 963.)

## FORFEITURE NOTICE

THE GRAND JURY HEREBY FINDS probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Fed.R.Crim.P. 32.2(a), the defendants, are hereby notified that if convicted of Count One of this Indictment, they shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a) and 970, any property constituting, or derived from, any proceeds each defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant=s property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. The property subject to forfeiture includes at least $25,000,000.00 in United States currency representing proceeds the defendants obtained in the course of the drug conspiracy and property involved in the money laundering conspiracy, as alleged in Count One of this Indictment.

(Pursuant to Title 21, United States Code, Sections 853 & 970 and Fed.R.Crim.P.32.2).

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

_____
Foreperson

Tracy Doherty-McCormick
Acting United States Attorney

By: _____
David A. Peters
Special Assistant U.S. Attorney

_____
Katherine E. Rumbaugh
Assistant U.S. Attorney

Arthur G. Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By: _____
Anthony Aminoff
Special Assistant U.S. Attorney

_____
Michael M. Waits
Special Assistant U.S. Attorney