FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2019 JUL 18  P 4:01

CLERK ... COURT
...

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:18-CR-74 |
| v. | The Hon. Liam O'Grady |
| ANTONIO ALDEMAR AVILA ACEVEDO, | Sentencing: July 24, 2019 |
| *Defendant.* | **UNDER SEAL** |

## GOVERNMENT'S POSITION ON SENTENCING

The defendant, Antonio Aldemar Avila Acevedo, comes before the Court for sentencing after pleading guilty to one count of conspiracy to distribute five kilograms or more of cocaine, knowing or intending or having reasonable cause to believe that it would be imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960, and 963. The United States has no objection to the Probation Officer's calculations of the defendant's Guidelines, as set forth in the Presentence Investigation Report (PSR) in paragraphs 80-81. Further, the United States agrees that the defendant has assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The Probation Officer has already accounted for this one-level decrease in its Guidelines calculation. PSR ¶ 54.

The United States respectfully submits that a sentence of no more than 262 months' imprisonment—the bottom of the applicable Guidelines range—is appropriate in this case.

## BACKGROUND

The defendant was the manager of a crew of cocaine traffickers operating out of the port of Santa Marta, Colombia. Along with his co-defendants, Fabian Andres Leyton Vargas ("Leyton") and Jose Mauricio Castaneda Garzon ("Castaneda"), the defendant facilitated the distribution of multi-hundred kilogram quantities of cocaine, valued at millions of U.S. dollars, by causing the cocaine to be smuggled aboard commercial shipping containers. This also involved the use of multiple import/export businesses as "front" companies to conceal drug trafficking by providing facially legitimate documentation for loads leaving the port. The conspiracy's goal was to traffic the cocaine on behalf of Colombia-based investors and buyers around the world, including in Mexico and Guatemala—two transshipment points for cocaine ultimately destined for the United States.

In order to accomplish this goal, the conspirators bribed Colombian military and/or law enforcement officers working at the port. Specifically, the defendant and his co-conspirators targeted these officers for bribes, and then arranged for the bribed officers to be assigned to inspect cargo in which cocaine was hidden, and therefore turn a blind eye to contraband leaving the port. During the course of this scheme, the defendant and his co-conspirators arranged payments totaling more than $107,000 to a single port commander for his assistance in facilitating the smuggling of shipments of cocaine.

While the conspiracy was not ultimately successful—all shipments were seized by law enforcement before they could reach their intended customers—the defendant, with the help of his co-conspirators, was able to broker the movement of a staggering amount of cocaine, including:

- 1,773 kilograms seized in the port of Santa Marta in July 2017;

- 935 kilograms seized in Bremerhaven, Germany, in September 2017;
- 8,835 kilograms seized in Antwerp, Belgium, in December 2017; and
- 2,081 kilograms seized in the port of Santa Marta in March 2018.

Following the March 2018 seizure in Santa Marta, the co-conspirators were arrested and taken into Colombian custody on April 26, 2018, to await extradition. The defendant was extradited to the Eastern District of Virginia on December 19, 2018. On April 10, 2019, the defendant pleaded guilty to the sole count of the indictment, conspiracy to distribute five kilograms or more of cocaine, knowing or intending or having reasonable cause to believe that it would be imported into the United States.

## SENTENCING ANALYSIS

### I. Law

The Court consults both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to

3

promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution. 18 U.S.C. § 3553(a).

## II. Guidelines Calculation

With respect to the sole count of the indictment, the Probation Officer has appropriately calculated an adjusted offense level of 39 and criminal history category I for the defendant. PSR ¶¶ 80, 81. The base offense level is 38 based on the quantity of cocaine involved in the offense. PSR ¶ 48. The parties stipulated in the plea agreement that two points should be added to the offense level pursuant to U.S.S.G. § 2D1.1(b)(11) because the defendant and his co-conspirators bribed, or attempted to bribe, a law enforcement officer to facilitate the commission of the offense. *See* PSR ¶¶ 8, 47. Further, the parties agreed that two points should be added to the offense level pursuant to U.S.S.G. § 3B1.1(c) because the defendant was an organizer, leader, manager, or supervisor of the criminal activity.

The government also concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under § 3E1.1(b). The

4

defendant's total offense level of 39 and criminal history category I yields an advisory Guidelines range of 262 to 327 months. PSR p. 14.

### III. Section 3553(a) Analysis

Although it is true that the defendant and his conspirators never sent cocaine directly into the United States, it is important in this case to understand the seriousness of the offense, and to account for the need to send a message of general deterrence to individuals involved in the extraterritorial distribution of cocaine. Cocaine is a powerful narcotic that is abused at a significant cost to the users, the medical community, law enforcement, and society in general. Colombia produces about 90% of the cocaine powder reaching the United States.[1] The United Nations Office on Drugs and Crime found that by the end of 2017, more land in Colombia was used to cultivate coca—the plant from which cocaine is derived—than ever in the country's history, translating into a huge increase in capacity for the production of cocaine hydrochloride.[2] This case perfectly illustrates the immense quantities of cocaine that drug trafficking organizations are capable of procuring. The sentence imposed on this defendant should send a clear message of deterrence to those who would seek to get involved in transporting wholesale quantities of cocaine out of Colombia.

---

[1] United States Drug Enforcement Administration, *Drugs of Abuse: A DEA Resource Guide* (2017 Edition) at 51, *available at* https://www.dea.gov/sites/default/files/sites/getsmartaboutdrugs.com/files/publications/DoA_20 17Ed_Updated_6.16.17.pdf (last accessed June 20, 2019).

[2] United Nations Office on Drugs and Crime, *Coca Crops in Colombia at all-time high, UNODC Report finds*, *available at* https://www.unodc.org/unodc/en/frontpage/2018/September/coca-crops-in-colombia-at-all-time-high--unodc-report-finds.html?ref=fs1 (last accessed June 20, 2019).

5

The sentence imposed on this defendant should also reflect the nature and circumstances of this offense. The defendant was not a mere participant in this conspiracy, but instead played a key role in the Central and South American cocaine supply chain, by arranging for wholesale quantities of cocaine to be smuggled into and out of the port of Santa Marta. The defendant was the manager of an operation that was able to get its hands on more than thirteen metric tons of cocaine to be covertly shipped to locations across the globe. About four of those metric tons were intended for eventual importation into the United States. The defendant was the linchpin of the conspiracy, providing the necessary logistical link between the Colombian cocaine investors, Mexican or Guatemalan buyers, and corrupt port officials.

Further, the offense conduct included the pervasive corruption of law enforcement officers at the port, including the defendant directly bribing law enforcement officials and directing others to do so. The only way the scheme would work was by the defendant and his co-conspirators metaphorically "greasing the wheels" with the officers in the port in order to smuggle vast quantities of cocaine.

Finally, it is important that the sentence imposed send a message of specific deterrence to this defendant, considering the defendant has a prior conviction for trafficking cocaine. The defendant was incarcerated in Colombia for three years—from 2008 to 2011—and while this conviction does not affect his guidelines calculation, the sentence imposed in that case evinces a significant charge. *See* PSR ¶ 59. The defendant evidently was neither rehabilitated nor deterred during his previous incarceration. Ultimately, the seriousness of this crime, the need to prevent

this specific defendant from committing further crime, and the general need to deter this type of criminal activity, warrants a sentence of a not-insignificant term of imprisonment.

## CONCLUSION

Accordingly, the United States submits that a term of imprisonment of no more than 262 months is sufficient but not greater than necessary to satisfy the sentencing factors under Section 3553.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/ Katherine E. Rumbaugh
Katherine E. Rumbaugh
David A. Peters
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2019, I filed the foregoing under seal with the Clerk of Court; and I will further forward an electronic copy to counsel for the defendant as well as to the United States Probation Officer assigned to the case.

/Katherine E. Rumbaugh
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3982
katherine.rumbaugh@usdoj.gov